1  ROBERT WAGGENER - SBN: 118450
   LAW OFFICE OF ROBERT WAGGENER
2  214 Duboce Avenue
   San Francisco, California 94103
3  Phone:        (415) 431-4500
   Fax:          (415) 255-8631
4  E-Mail:       rwlaw@mindspring.com

5  Attorney for Defendant HA'NAI IBRAHIM

6

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10

11  UNITED STATES OF AMERICA              No.  CR15 0444 CRB

12                           Plaintiff,   **DEFENDANT HA'NAI IBRAHIM'S
                                          SENTENCING MEMORANDUM AND
13               v.                       REQUEST FOR DOWNWARD
                                          VARIANCE [18 U.S.C. § 3553)a)(1)**
14  HA'NAI IBRAHIM,
                                          Date:      October 13, 2016
15                           Defendant.   Time:      10:00 a.m.
                                        / Crtrm.:    6 (Honorable Charles R. Breyer)
16

17                                  **I.**

18                           **INTRODUCTION**

19        Forty-two year old defendant Ha'nai Ibrahim appears before this Court for sentencing

20  following his guilty plea to two counts of possessing powder cocaine with the intent to distribute.

21  The defendant entered into a plea agreement on June 29, 2016, allowing him to seek a variance

22  from the advisory guideline range of 18-24 months.  The Presentence Report (PSR) was prepared

23  by United States Probation Officer Aakash Raju and includes a recommendation that Mr. Ibrahim

24  be sentenced to the high end of the guideline range, 24 months, along with a $3,000.00 fine and

25  other conditions.  Defendant objects to the recommended two-year sentence as being completely

26  unjustified and inappropriate, and recommends that the defendant be sentenced to probation or a

27  year and one day in custody at most.

28

## II.

## FACTUAL BACKGROUND OF THE CASE

With the assistance of co-Defendant, Kevin Kelley, Mr. Ibrahim sold powder cocaine to an informant on March 12, March 16, and April 1, 2015. [PSR ¶¶ 9, 10, and 12][1]  There were two one-ounce purchases, and then a two-ounce purchase.  The net weight of the drugs was just over 108 grams (94.1 grams of pure substance) and the drugs were sold for a total of $ 3,900.00. Mr. Ibrahim made all of $300 for his participation.

Defendant Ibrahim brokered these drug transactions as a favor for a friend, and was not the direct supplier of the narcotics.  The informant approached defendant Kelley, and then Kelley reached out to Ibrahim to help him score drugs for the pushy informant. Intercepted phone calls make clear that Mr. Ibrahim was not the source of the drugs. After the last purchase, the informant continued to contact the defendant trying to purchase more drugs, including crack cocaine and methamphetamine, but the defendant cut off contact.  The informant(s) continued to make further narcotics and weapon purchases in the Bay Area, and eventually, Mr. Ibrahim and his two co-defendants, along with a number of other defendants caught up in the overall investigation were arrested in September of 2015 and federally charged.

Mr. Ibrahim made his initial appearance in court on September 3, 2015.  Eventually, with the posting of property by his family, Mr. Ibrahim was ordered released on September 9, 2015. For the first four months of his release, until January, 2016, Mr. Ibrahim's release conditions were quite severe.  He was on complete lock down, unable to leave his house except for court proceedings and medical and legal visits.  On October 30, 2015, the release conditions were slightly modified such that he could attend religious services and visit his mother at her Half Moon Bay nursing home.  On January 7, 2016, conditions were modified so that Mr. Ibrahim could leave his house and work at his family's Pizza Zone restaurant on Valencia Street six days a week from 3:00 until 11:00 p.m.  In April of this year, another modification was made such that

---

[1]Mr. Ibrahim had no involvement in the Tenderloin methamphetamine transaction involving the informant, Defendant Kelley, and the third co-Defendant, Royal Holyfield, charged in Count 4 of the Indictment.  (See PSR ¶ 11)

1    Mr. Ibrahim was allowed two hours out of his home (only in Daly City) for recreation, personal

2    business, or time with his now six-year old daughter.  In other words, after being on complete

3    lock down for four months at his home, Mr. Ibrahim has since only been allowed out of his house

4    to go to work every week, with a total of two hours of allowed recreation time on weekends.

5         Despite these rigid conditions, Mr. Ibrahim has been completely compliant with Pretrial

6    Services.  According to his Pretrial Services officer, "Mr. Ibrahim has been reporting as directed,

7    his drug tests have been negative and he has been responsive and cooperative with our office."

8    (See Exhibit B, attached)  Mr. Ibrahim is not statutorily entitled to custodial credits for his

9    compliance with these difficult conditions, but the court should fairly take his circumstances and

10   compliance into consideration when deciding the appropriate sentence. [2]

11        Also a part of his pretrial release conditions is that Mr. Ibrahim is to stay away from the

12   Bayview/Hunter's Point neighborhood.  He has fully complied with that condition, but not

13   without objection.  Efforts to convince the government and United States Magistrate Judge Kim

14   to modify the restrictions were unsuccessful.  Defendant Ibrahim acknowledges that the three

15   drug transactions in this case took place in the area of his family businesses in the Bayview

16   neighborhood, the Star Market and Go-Gadget (now Pizza Zone Two).  It was on this basis that

17   the government argued to keep him out of the neighborhood, and Magistrate Kim agreed.  The

18   issue of being able to return to the neighborhood is important to Mr. Ibrahim and is being

19   brought to the attention of this Court with respect to his sentencing.

20        Mr. Ibrahim has written a letter to the Court regarding the present offense, his connection

21   to the Bayview/Hunter's Point community, and the family businesses in the Bayview community,

22   including the new Pizza Zone Two.  (Exhibit A, attached)  A wealth of letters from Mr.

23   Ibrahim's supporters has been submitted to the Court by the probation officer already, and

24   additional letters are submitted with this memorandum (Exhibit C, attached)  Many of these

25   _____

26        [2]Back in 2001, while in the midst of the federal Big Block case, Mr. Ibrahim was also
     fully compliant with his release conditions for over a two-year period before his case was
27   resolved.  Once sentenced, Mr. Ibrahim was allowed to voluntarily surrender and then, upon his
     release, he fully complied with his supervised release conditions until their successful
28   termination.

1    letters are from people that live in the Bayview/Hunter's Point community and have been

2    associated with Mr. Ibrahim for many years.

3          After the period of time when the charged drug transactions took place in early 2015,

4    through the time of his arrest in September, Mr. Ibrahim was in the process of supervising the

5    construction and conversion of the old Go-Gadget store to a Pizza Zone Two, to be a sister store

6    to the Pizza Zone on Valencia Street.  Mr. Ibrahim is the family member with construction skills,

7    having done a lot of the work building out the first Pizza Zone.  The Pizza Zone Two is right

8    next to the Star Market.[3]  Attempts to convince the government and Magistrate Kim to allow Mr.

9    Ibrahim to personally oversee the continuation of the construction project were unsuccessful.  As

10   a result, there were extensive delays in coordinating and managing the contractors and

11   completing the project, while still paying a hefty rent for the location.  Nonetheless, all the permit

12   inspections have now been passed, and with some additional finish work and electronics (*e.g.,*

13   cable, wi-fi, POS system), the business is slated to open at the end of this month.  It is Mr.

14   Ibrahim's aspiration to get beyond the sentence to be imposed in this case, and run that business.

15   This goal and this information is provided to the court as a matter of understanding the future for

16   Mr. Ibrahim, and also as a matter of the supervised release conditions to be imposed by the

17   Court, a topic discussed further below.

18                                              **III.**

19                        **CRIMINAL HISTORY FOR MR. IBRAHIM**

20         The significant and major felony convictions for Mr. Ibrahim are two federal felony

21   phone counts that he received in 2004 as a result of the Big Block investigation involving

22   activities through 2001 - now over 15 years ago.  (See, PSR pgs. 11-12, ¶ 38)  These convictions

23   resulted in a 60-month sentence and involved the Star Market, the same business the family still

24   runs, as it has since 1969.  Mr. Ibrahim did his time and took full advantage of the opportunities

25

26
        [3]A proof sheet of photos of the Pizza Zone Two interior and exterior is attached hereto as
27   Exhibit D for the Court's reference.  Permit information and a larger set of photographs during
     the construction process were forwarded earlier to Magistrate Kim, and most recently, to
28   Probation Officer Raju.

     **DEFENDANT IBRAHIM'S SENTENCING**
     **MEMORANDUM**                          -4-

offered by the BOP (see, PSR pg. 24, ¶ 82), and then successfully terminated his supervised

release in 2008 without a violation. Since that time, Mr. Ibrahim has been convicted of a couple

of misdemeanors and an infraction. (See, PSR pgs. 12-14, ¶¶ 39-41) One of those misdemeanor

cases from 2012 is fully described in the PSR, from the police perspective and a summary of the

police report. (PSR pgs. 12-13, ¶ 39) Significantly, that case went to trial in 2014 in the San

Francisco Superior Court and Mr. Ibrahim testified at his trial. While that fact is mentioned in

the PSR, including the fact that Mr. Ibrahim ended up being convicted of three relatively minor

misdemeanors, the PSR does not give a perspective of the defense side of the case and why Mr.

Ibrahim was acquitted of all the felony allegations. A press release from the San Francisco

Public Defender's Office regarding the trial is attached hereto as Exhibit E, and there is a letter

from Mr. Ibrahim's public defender who tried the case, Chesa Boudin, included with the support

materials forwarded by the probation officer. The point being, among other things, that the

summary information from police reports is not necessarily representative of what happened in a

particular incident. The probation officer in the PSR describes the summaries of these criminal

history arrest incidents as "troubling" and "concerning", but these are all cases where the

defendant's side of the story is not being told, and are all cases reviewed by a district attorney's

office and then dismissed or discharged before the defendant ever went to court. See, PSR, ppgs.

18-21, ¶¶ 49, 50, 51, 52, 53, 62, 63.[4]

Based on the defendant's previous criminal history "and in particular, his prior federal

offense for selling cocaine base", the probation officer is recommending a high-end guideline

sentence of 24 months. (PSR Sentencing Recommendation, pg. 3) First of all, Mr. Ibrahim was

not convicted of selling cocaine base, though he admitted that there were between 50-150 grams

of cocaine base involved in his offenses. He was convicted of two phone counts (18 U.S.C.

¶844). Second, the charged activity in the Big Block case took place over 15 years ago, when

Mr. Ibrahim was in his late 20's. He has paid his price for those offenses and his criminal history

_____

[4]A number of the state cases involved marijuana cultivation, for which Mr. Ibrahim had state
permission and a cannabis card. One of those cases resulted in an infraction and fine, and the rest were
discharged. (See, PSR, ppgs. 14, 17-19, ¶¶ 41-50, 52) Mr. Ibrahim is no longer in the medical marijuana
business.

since that conviction and sentence is relatively minor, consisting of the three misdemeanors mentioned above, a false identification misdemeanor where he got 18 months' probation and a day in jail, and an infraction. (PSR ppg. 12-14 ¶¶ 39, 40, 41) It is submitted to the Court that this history in no way justifies a high-end guideline sentence.[5] Ibrahim's assessment as a Criminal History Category III already takes the misdemeanors and infraction into account, and there is no legitimate argument of increased criminality or danger to society.

Defendant Ibrahim also lodged his objection with the probation officer as to the allegation that he is currently an affiliate of the Big Block street gang (see, pg. 12, ¶ 38[6]; Addendum to the Presentence Report, Objection Number 2) There is no question that Ibrahim was a Big Block affiliate back in 2001, and there is no question that his family still runs the Star Market. The business is one of the few markets in the heart of a tough, developmentally challenged neighborhood. The clientele at the store includes people of all walks of life, undoubtedly including the occasional gang member or affiliate. However, suspicious individuals shopping at the Ibrahim's market or restaurants does not justify a conclusion of gang affiliation, particularly where there is no further evidence of participation, support, or affiliation with gang activities, and people in the neighborhood have very few shopping or dining options. The probation officer relies on the case agent's conclusion that "based on Ibrahim's prior dealings with Big Block gang members, and his admission that he was previously affiliated with Big Block, the defendant maintains a *good standing* with members of the gang". (Emphasis added) (Addendum to Presentence Report, Probation Officer's Response to Objection Number 2) It is submitted that this unsupported conclusion of "good standing" is not sufficient to portray Mr. Ibrahim as a gang affiliate, and the Court should strike the labeling reference from the PSR. Mr. Ibrahim and his family grew up in the Bayview Hunter's Point neighborhood and they have inevitably associated

---

[5]Defendant Ibrahim lodged an objection with the probation officer as to the reference in the draft PSR that Mr. Ibrahim's criminal history could potentially be under-represented. (See, Addendum to the Presentence Report, Objection Number 5; PSR pg. 29, ¶ 111)

[6]"According to the ATF case agent: "[Ibrahim] is still considered an affiliate of the Big Block based on his association with gang members at the Star Market."

with all the members of that community. That association and acquaintance does not make them gang members, and the letters and other material presented on behalf of Mr. Ibrahim demonstrate a genuine and real desire to help that community. The Ibrahim family is good for that community and their positive efforts should not be thwarted.

## IV.

### ANALYSIS PURSUANT TO 18 U.S.C. § 3553(a) AND SENTENCING RECOMMENDATION

The primary directive in § 3553(a) is that the court must impose a sentence that is "sufficient, but not greater than necessary, to comply with" the purposes of sentencing. *See*, 18 U.S.C. § 3553(a) Those purposes include the need: (1) to provide just punishment; (2) to create adequate deterrence; (3) to protect the public; and (4) to provide the defendant necessary treatment and training. 18 U.S.C. § 3553(a)(2) The advisory guidelines for Mr. Ibrahim's call for a sentence of between 18-24 months. The Court has discretion to sentence Mr. Ibrahim below the applicable guideline range as long as the sentence is not unreasonable in light of the other 3553(a) factors.

From the materials submitted, it is clear that Mr. Ibrahim has a wealth of community support and that he has done a lot of positive, constructive things for his family, friends, and members of his community. He very clear made a mistake getting involved in the charged drug transactions, but he has bounced back and gotten himself back on track and performed flawlessly on pretrial release, under some very strict conditions. He is fortunate to have a close family and have employment available to him. He has a future plan to run the Pizza Zone Two establishment, and warehousing him before that can be accomplished is submitted to be unnecessary. The suggestion is made that Mr. Ibrahim is a good candidate for probation in this case. He has shown that he is completely amenable to supervision, and strict measures of a search condition and whatever level of monitoring would be adequate to keep him in line and on the right track. Should the Court be inclined to impose a custodial sentence, first of all the Court should take into account the onerous, restrictive conditions that the defendant has been under for

over a year, and it is submitted that such a custodial sentence should not in any case be more than one year and one day as a just and adequate sentence.

Defendant objects to two of the recommended conditions of his supervised release, numbers 4 and 9, the gang condition and the suggested stay away from the Star Market. As to number 4, the gang condition, a prohibition from gang activity or direct association is fine, but the recommended condition is too broad, and is impractical under Mr. Ibrahim's circumstances. Mr. Ibrahim's employment will be with his family businesses which are open to the public. As written, the condition states that he will be presumed to be in violation of the condition if he is found to be "in the company" of any individual wearing the "clothing, colors or insignia of Big Block, or any other gang". Within his employment, Mr. Ibrahim has no control over who enters the Star Market, Pizza Zone, or any other family establishment. The condition should be modified to accommodate Mr. Ibrahim's employment, and its environment and circumstances.

As made clear, it is Mr. Ibrahim's goal to manage the Pizza Zone Two, which is right next to the Star Market. It is respectfully requested that Mr. Ibrahim not be prohibited pursuant to the recommended condition 9 from working at any of the family businesses, whether it is the Star Market, the Pizza Zone, or Pizza Zone Two.

### CONCLUSION

For the foregoing reasons, Defendant requests this Court to impose the sentence suggested above, and to reject the identified conditions of supervised release suggested by the probation officer. Defendant requests the Court to allow him to voluntarily surrender if a custodial sentence is imposed, and to recommend to the Bureau of Prisons that he be housed as close to the Bay Area as possible. It is unnecessary to impose a fine in this case.

Dated: October 6, 2016                    Respectfully submitted,


                                          ___/s/_____
                                          ROBERT WAGGENER
                                          Attorney for Defendant
                                          HA'NAI IBRAHIM